# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00530-CV

**HealthTronics, Inc., Appellant**

**v.**

**Lisa Laser USA, Inc. and Lisa Laser Products, OHG, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-GN-08-004469, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## O P I N I O N

HealthTronics, Inc. sued Lisa Laser USA, Inc. and Lisa Laser Products, OHG (collectively, "Lisa Laser") for breach of contract and tortious interference with contract. After the trial court issued an order dismissing the suit based on a mandatory forum-selection clause in the parties' contract, it denied Lisa Laser's request for an award of attorneys' fees. On appeal, this Court reversed the portion of the trial court's order denying attorneys' fees and remanded for a determination of the amount of reasonable attorneys' fees incurred. *Lisa Laser USA, Inc. v. HealthTronics, Inc.*, No. 03-10-00464-CV, 2011 WL 1237639, at *5 (Tex. App.—Austin Mar. 31, 2011, no pet.) (mem. op.) ("*Lisa Laser II*"). Now, after the remand, HealthTronics appeals the trial court's order awarding $150,768.00 in attorneys' fees and additional fees in case of appeal to Lisa Laser. In one issue on appeal, HealthTronics contends that the trial court erred by: (1) admitting the testimony of Lisa Laser's attorneys, which HealthTronics asserts was inconsistent and unreliable;

(2) concluding the fees sought by Lisa Laser were reasonable; and (3) awarding fees to Lisa Laser that were not related to obtaining dismissal of the case in Texas. Because we hold that the attorney affidavits were properly admitted and the attorneys' fees granted by the trial court are reasonable and were incurred during the prosecution of the case in Texas, we will affirm the trial court's award.

## BACKGROUND

The factual and procedural background of this case is fully discussed in our prior opinion in *Lisa Laser II*. *See id.* at *1-2. For our purposes in this appeal, we need only provide a brief timeline of relevant procedural events to provide context for our decision in this case.

HealthTronics sued Lisa Laser in Travis County District Court in December 2008 for breach of contract and tortious interference with contract. In January 2009, Lisa Laser moved to dismiss the suit based on the contract's forum-selection clause, asserting that the exclusive venue for disputes arising out of the contract was Alameda County, California. The trial court denied Lisa Laser's motion to dismiss.

Lisa Laser then filed a petition for writ of mandamus in this Court, seeking to compel the trial court to vacate its order and dismiss the suit. This Court denied the petition in May 2009. Lisa Laser next filed a petition for writ of mandamus in the Texas Supreme Court. During the pendency of the mandamus proceeding in the supreme court, in August 2009, Lisa Laser filed an amended answer in the underlying suit, asserting counterclaims against HealthTronics. In October 2009, the parties entered into an agreement that all discovery conducted while the lawsuit was in Travis County could be used in any lawsuit arising from the same or similar facts and claims between the parties in any California court. In December 2009, Lisa Laser sued HealthTronics in

2

Alameda County, California, asserting exactly the same claims that it had asserted as counterclaims in HealthTronics's Texas suit. Also during this time, the parties conducted written discovery, HealthTronics began noticing depositions, and it took in Texas the deposition of Lisa Laser's president, who works in California. In April 2010, the Texas Supreme Court conditionally granted Lisa Laser's petition for writ of mandamus, ruling that the forum-selection clause applied to the parties' dispute. *See In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 887 (Tex. 2010) (per curiam) ("*Lisa Laser I*").

In May 2010, Lisa Laser filed a motion in the trial court requesting that the court dismiss the case. Lisa Laser also requested an award of attorneys' fees incurred in connection with its successful defense of the Texas suit, relying on a clause in the parties' contract that provides:

> The prevailing party in any legal action brought by one party against another party and arising out of this Agreement shall be entitled, in addition to any other rights and remedies it may have, to reimbursement for its expenses, including court costs and reasonable attorneys' fees.

Lisa Laser sought an award of attorneys' fees and expenses in the amount of $117,596.10. It attached to its motion affidavits from both its California attorney, Richard E. Korb, and its Texas attorney, Derek L. Davis.

The affidavits included extensive descriptions of each attorney's qualifications and experience. Korb had been licensed in California for approximately 29 years at the time he submitted the affidavit. He testified that his practice is primarily civil litigation with an emphasis on business-related disputes and commercial litigation, and he has served as lead counsel in well over 150 civil cases and approximately six appeals. Davis had been licensed in Texas for approximately

3

15 years at the time he submitted his affidavit. Davis testified that he has been a trial lawyer throughout his career, handling primarily personal injury and commercial litigation, and he has served as lead counsel in at least 12 jury and bench trials, assisted with others, and has been lead appellate counsel in over 10 appeals. Each attorney testified to his familiarity with the legal billing practices and rates for attorneys practicing in their respective regions, i.e., the East Bay of San Francisco, California for Korb; Austin, Texas for Davis. Davis also testified about his familiarity with the *Arthur Andersen* factors that Texas courts consider when determining an amount of "reasonable and necessary" attorneys' fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).[1] Davis offered his opinion about the applicability of each of the *Arthur Andersen* factors relevant to this case. Korb also offered a detailed opinion about the work that the case had required, and his testimony touched on most of the *Arthur Andersen* factors.

Each attorney attached documentation to his affidavit showing his time entries on the case. The documentation included a description of the work done (with very little redaction), the

---

[1] The *Arthur Andersen* factors include: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *see also Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam) (requiring consideration of factors including nature and complexity of case, nature of services provided by counsel, time required for trial, amount of money involved, client's interest that is at stake, responsibility imposed upon counsel, and skill and expertise required).

amount of time spent, and the hourly rate, as well as itemized expenses. Korb also provided a detailed description in his affidavit of the work done to defend against the case in Travis County and explained some of the differences between Texas procedure and California procedure that resulted in more expense in the Texas case than would have been required in California. Davis testified that the time entries that he submitted related only to the work he had done defending Lisa Laser in the Travis County case and enforcing the forum-selection clause through mandamus actions in this Court and the Texas Supreme Court. Each attorney stated, based on his knowledge of the services rendered to Lisa Laser, that their submitted fees ($67,294.05 for Korb; $42,687.50 for Davis) were reasonable, as were the incurred expenses totaling $7,614.55.

HealthTronics opposed the motion, asserting that Lisa Laser was not a "prevailing party" under either California or Texas law for purposes of fee recovery. It did not object to Korb's and Davis's affidavits or the attached documents. It did not submit any evidence opposing the reasonableness of either attorney's hourly rates or time spent on the case.

The trial court dismissed the suit, as mandated by the supreme court, but it denied Lisa Laser's request for attorneys' fees. Lisa Laser appealed the trial court's ruling on attorneys' fees to this Court. As mentioned above, we reversed the portion of the trial court's order denying an award of attorneys' fees, finding that Lisa Laser was entitled as a prevailing party under California law to an award of reasonable attorneys' fees. *Lisa Laser II*, 2011 WL 1237639, at \*5. We remanded the case to the trial court for a determination of the amount of the fee award. *Id.*

On remand, Lisa Laser filed a supplemental motion for attorneys' fees, requesting $31,672.00 in additional fees, bringing the total requested amount of fees and expenses to

$149,268.10. The additional fees were for discovery related to its counterclaims, pre-litigation attorneys' fees, and fees related to the hearing on the original motion for attorneys' fees, the appeal of that order, and preparation of the supplemental motion. Lisa Laser based its supplemental request on a California court of appeals case that had been decided while its appeal in *Lisa Laser II* was pending before this Court. *See PNEC Corp. v. Meyer*, 118 Cal. Rptr. 3d 730, 736 (Cal. Ct. App. 2010). Lisa Laser asserted that *PNEC Corp.* clarified that an appropriate fee award includes fees for "work done while the case was under [the trial court's] jurisdiction." *Id.* Lisa Laser argued that following *PNEC Corp.*'s holding and including all work done in Texas, including discovery, would eliminate any uncertainty about a California court's ability to determine the reasonableness of attorneys' fees incurred by attorneys following the discovery procedure of a foreign jurisdiction. In addition, Lisa Laser argued that "[e]stablishing a bright line between the Texas and California litigation" by including the fees incurred from pre-litigation to dismissal would prevent either state's trial court from second-guessing the other's decision.

HealthTronics opposed the supplemental motion, objecting to the affidavits submitted by Korb and Davis in connection with both the first motion for fees and the supplemental motion for fees. HealthTronics submitted two affidavits that Korb had offered in the California litigation seeking attorneys' fees for various claims, asserting that the four Korb affidavits taken together demonstrated that Korb's testimony was so self-contradicting and self-controverting as to be inherently unreliable. HealthTronics argued that therefore Korb's affidavits should not be admitted as competent evidence. HealthTronics asserted that "[f]or the same reasons, HealthTronics also objects to the admissibility of the conclusory and unsupported statements in [Davis's affidavits] purporting to

6

support the reasonableness of the conflicting testimony and opinions advanced by Mr. Korb."

HealthTronics further argued that Lisa Laser had failed to carry its burden of proof on the

reasonableness of the requested attorneys' fees both because of its attorneys' inconsistent affidavit

testimony and because it sought fees unrelated to its pursuit of the motion to dismiss.

At the hearing on the motion, Davis notified the court that Lisa Laser had incurred

another $1,500.00 in attorneys' fees related to his appearance at the hearing, resulting in a total fee

request of $150,768.00. The trial court awarded Lisa Laser the total amount requested, as well as

conditional appellate fees in the amount of $10,000.00 for an appeal to this Court; $5,000.00 for

a response to a petition for review in the supreme court; $5,000.00 for briefing on the merits if

requested by the supreme court; and $3,500.00 for preparing and attending oral argument in either

of the higher courts. This appeal followed.

During the pendency of this appeal, the California court conducted a trial on

the merits of the California case.[2] A jury found that HealthTronics had breached its contract with

Lisa Laser, had knowingly made a false representation of an important fact, had intentionally failed

to disclose an important fact, and had intended to deceive Lisa Laser. The trial court entered

---

[2] "An appellate court may take judicial notice of a relevant fact that is . . . 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' . . . Under this standard, a court will take judicial notice of another court's records if a party provides proof of the records." *Freedom Commc'ns, Inc. v. Coronado*, ___ S.W.3d ___, No. 09-0745, 2012 WL 2361719, at *2 (Tex. 2012) (per curiam) (citing Tex. R. Evid. 201(b)) (other citations omitted). Lisa Laser submitted the verdict form from the California trial, the California trial court's final judgment, and its post-trial order on attorneys' fees. Texas Rule of Evidence 201(c) provides that "[a] court may take judicial notice whether requested or not." This evidence is relevant to our consideration of California law governing the attorneys' fees request in the Texas case. Accordingly, we take judicial notice of the California trial court's records.

judgment on the jury's verdict that HealthTronics had caused damages to Lisa Laser in the amount of $7,647,345.00 on the breach-of-contract claim and in the amount of $9,263,345.00 on the intentional-misrepresentation claim. The California court further awarded Lisa Laser a total of $1,745,740.00 in attorneys' fees related to the California case. The court specifically noted that it was:

> not considering Mr. Korb's approximate[ly] 379 hours billed in the Texas litigation for a number of reasons including this court's lack of first hand participation in the Texas litigation (so as to be in the position of judging the reasonableness and worth of the services) and the wish to avoid any appearance of inconsistent adjudications.

It also noted that it was taking into consideration "the litigation history here which has largely been occasioned by the moves of [HealthTronics's] counsel as to choice of forum and procedural issues put in play."

### CHOICE OF LAW AND STANDARD OF REVIEW

The parties' distribution agreement contains a choice-of-law provision stipulating that California law governs the contract. Lisa Laser asserts, and HealthTronics does not dispute, that this provision requires us to apply California law to the substantive issues related to Lisa Laser's request for attorneys' fees.[3] *See Lisa Laser II*, 2011 WL 1237639, at *2 (noting parties' agreement that California law applied to question of whether attorneys' fees were recoverable under parties'

---

[3] Although HealthTronics does not dispute Lisa Laser's invocation of California law, HealthTronics primarily relies on Texas law, not California law, to support its arguments. While some of the substantive Texas law on the reasonableness of attorneys' fees is similar to California law, as we will explain, there are important differences.

8

contract). We will apply California law to the substantive question of whether the trial court awarded reasonable attorneys' fees to Lisa Laser and Texas law to procedural questions. *See In re Lisa Laser I*, 310 S.W.3d at 882 n.2 ("The law of the forum state applies to procedural questions."). Procedural questions include matters such as preservation of error, the admissibility of evidence, and standards of review. *See Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387-90 (Tex. 2008) (applying Texas law to procedural matters including preservation of error and objections to and sufficiency of expert testimony and Virginia law related to fraud claim); *Illinois Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 532 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (applying Texas law to determine standard of review and Illinois substantive law to contract's construction).

In this case, an award of reasonable attorneys' fees is mandatory under California law because Lisa Laser is the prevailing party. *Lisa Laser II*, 2011 WL 1237639, at *5. The amount of fees to be awarded is a matter within the trial court's discretion under California law. *See PLCM Group v. Drexler*, 997 P.2d 511, 518 (Cal. 2000). In Texas, we review the trial court's decision about the reasonableness of the award under an abuse-of-discretion standard. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The reasonableness of attorneys' fees is a fact question, and we may not substitute our judgment for the factfinder's. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). However, "[i]t is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence." *Bocquet*, 972 S.W.2d at 21 (citations omitted). HealthTronics alleges the evidence does not support the fee award; thus, we must analyze whether there is sufficient evidence that the fees are reasonable to determine whether the trial court abused its discretion. *See id.* We will discuss below the Texas standards of review for challenges to the admission and sufficiency of the evidence.

9

**DISCUSSION**

HealthTronics contends in its sole issue on appeal that the trial court erred by awarding attorneys' fees to Lisa Laser. HealthTronics makes three arguments in support of this issue. First, it challenges the trial court's admission of the attorney affidavits that Lisa Laser offered in support of its fee request. Second, HealthTronics asserts that Lisa Laser failed to satisfy its burden of proof that the fees were reasonable, and thus, the trial court should have rejected the entire fee request. Third, HealthTronics argues that Lisa Laser, at most, was entitled to recover fees specifically incurred to obtain dismissal of the suit in Texas, but none of the other fees incurred while HealthTronics pursued its suit against Lisa Laser in Texas. Before turning to HealthTronics's arguments, we will summarize California's substantive law related to reasonableness of attorneys' fees.

**Establishing reasonable attorneys' fees under California law**

The key substantive question in this appeal is whether the attorneys' fees awarded to Lisa Laser are reasonable, and thus, we must apply California law to analyze the reasonableness of the fees. Under California civil code section 1717, "[r]easonable attorney's fees shall be fixed by the court." Cal. Civ. Code § 1717. To fulfill the legislative purpose of uniform treatment of fee recoveries in contract cases, "the trial court has broad authority to determine the amount of a reasonable fee." *PLCM Group v. Drexler*, 997 P.2d 511, 518 (Cal. 2000).

Under California law, the fee-setting inquiry ordinarily begins with the lodestar calculation. *Id.* The lodestar calculation is "the number of hours reasonably expended multiplied by the reasonable hourly rate." *Id.* The California Supreme Court has expressly approved the use

of "prevailing hourly rates" as a basis for the lodestar. *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001). The lodestar is the basic fee for comparable legal services in the community where counsel is located that the court may then increase based on a number of factors (e.g., the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the nature of the litigation precluded other employment by the attorneys, and the contingent nature of the fee award).[4] *Id.* The purpose of any adjustment by the court is to fix a fee at the fair-market value for the particular case. *Id.* The California Supreme Court considers "'the experienced trial judge'" to be "'the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion." *PLCM Group*, 997 P.2d at 518 (quoting *Serrano v. Priest*, 569 P.2d 1303, 1317 (Cal. 1977)). Moreover, "[t]he trial court may make its own determination of the value of the services, contrary to, or without the necessity for, expert testimony." *Id.* at 519.

As previously noted, Texas procedure requires that even a mandatory fee award must have evidentiary support. *Bocquet*, 972 S.W.2d at 21. It is an abuse of discretion for a trial court to rule without supporting evidence. *Id.* This is consistent with California courts' examination of

---

[4] As noted earlier, Texas law requires the factfinder to consider a number of factors when determining the reasonableness of a fee. *Arthur Andersen*, 945 S.W.2d at 818 (providing non-exclusive list of eight factors, including factors similar to California lodestar-multiplier factors). The difference between Texas law and California law is that in California, the court's inquiry may begin and end with the basic lodestar calculation of hours multiplied by rate. The trial court may, or may not, increase or decrease the fees sought based on its consideration of the multiplier factors. Texas courts, on the other hand, are *required* to consider these factors in every reasonableness determination. *See Arthur Andersen*, 945 S.W.2d at 818.

fee awards—the only substantive difference is the type of evidence required to show reasonableness under California law. For example, in *PLCM Group*, the California Supreme Court noted that the trial court used the proper standard to calculate the fees (the number of hours expended by counsel multiplied by the prevailing market rate for comparable legal services in the city where counsel was located). But the court also explained that there was sufficient evidence to support the award, noting that "in addition to the detailed documentation submitted by PLCM, the superior court was familiar with the quality of the services performed and the amount of time devoted to the case."[5] *Id.* As a result, the court concluded that "the award was not clearly wrong; the superior court did not abuse its discretion." *Id.* In short, under California law, a party seeking attorneys' fees must provide sufficient evidence to support the number of hours reasonably expended and the prevailing market rate for comparable legal services in the community where counsel is located, but expert testimony is not required.

**Admissibility of the attorney affidavits**

We turn first to HealthTronics's argument that the trial court should not have admitted the attorney affidavits. We apply an abuse-of-discretion standard to a trial court's decision to admit or exclude evidence. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

HealthTronics challenged the reliability of Korb's affidavits, asserting that they are inherently unreliable because they are self-contradicting and self-controverting. The trial court

---

[5] PLCM had been represented by in-house counsel employed by its parent company, and its fee motion included a detailed reconstruction by in-house counsel of time records for all activities performed. *PLCM Group v. Drexler*, 997 P.2d 511, 514 (Cal. 2000).

12

overruled the objection at the hearing on the motion for fees. HealthTronics's challenge to Korb's affidavits rests upon its premise that expert testimony is required to prove the reasonableness of attorneys' fees. *See Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 770-71 (Tex. App.—Dallas 2007, pet. denied) (discussing reliability challenge to expert testimony about attorneys' fees); *see also Woollett v. Matyastik*, 23 S.W.3d 48, 52 (Tex. App.—Austin 2000, pet. denied) ("Expert testimony is required to support an award of attorney's fees."). In the usual Texas case, the attorney affidavits would be subject to the two-part test that governs the admissibility of expert testimony, i.e., (1) the expert must be qualified; and (2) the testimony must be relevant and based on a reliable foundation. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). As previously discussed, however, California law does not require expert testimony to support the reasonableness of attorneys' fees.

In general, courts consider the admissibility of evidence to be a procedural question for purposes of choice-of-law analysis. *See Arkoma Basin*, 249 S.W.3d at 388-89 (applying Texas law when analyzing whether objections to expert testimony were required at trial and whether expert testimony was legally sufficient in case involving Virginia law); *see also* Restatement (Second) of Conflict of Laws § 138 (1971) ("The local law of the forum determines the admissibility of evidence, except as stated in §§ 139-141 [dealing with privileged communications, integrated contracts (parol evidence rule), and statute of frauds]."). Although ordinarily a forum applies its own local law to determine the burden of persuasion on a particular issue, when "the primary purpose of the relevant rule of the state of the otherwise applicable law is to affect decision of the issue rather than to regulate the conduct of the trial," we should apply the law of the state whose substantive law

13

otherwise applies. Restatement (Second) of Conflict of Laws § 133 (1971). In this case, California's rule about the kind of proof required to prove attorneys' fees should apply because the primary purpose of the rule is to affect decision of the issue; California law leaves determination of reasonable attorneys' fees entirely in the trial court's hands. *See Arkoma Basin*, 249 S.W.3d at 383 (determining that Virginia law requiring clear and convincing evidence of fraud to establish liability applied in legal-sufficiency review).

Thus, under California law, Korb's affidavits need not satisfy the expert-testimony admissibility requirements to provide evidence of reasonable attorneys' fees in this case. But even if we were to apply Texas law on the admissibility of expert testimony, Korb's testimony here satisfies the expert-testimony requirements. HealthTronics's only objection to the affidavits' admissibility was its objection that Korb's testimony about the variation in his hourly rate over the course of the case "demonstrate[s] an absence of reliability." To demonstrate reliability, there must be some basis for the expert opinion offered. *Robinson*, 923 S.W.2d at 557. If the court concludes "there is too great an analytical gap between the data and the opinion proffered," the expert's testimony is unreliable. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998). When we review the reliability of expert testimony, we are not determining whether the expert's conclusions are correct; we are examining the reliability of the analysis used to reach those conclusions. *Id.*

In this case, Korb testified about the reasonableness of his hourly rate based on his knowledge as an attorney of the legal market in which he worked and the type of rates charged for this type of case. The testimony that HealthTronics challenges is not Korb's expert testimony about the reasonableness of his rate, it is his testimony as a fact witness about what his rate was at different

14

time periods over the course of the case. *See Twin City Fire Ins.*, 223 S.W.3d at 772 (holding that attorney's testimony about how she arrived at her time estimates was factual, not expert, testimony). Korb's lay testimony about his hourly rate was based on personal knowledge; his expert testimony about the reasonableness of that rate was based on his "familiar[ity] with the legal billing practices and rates for attorneys practicing in [his] region." *See id.* HealthTronics has not raised any challenge to (1) Korb's qualifications to provide this opinion on reasonableness, or (2) the opinion's relevancy or the reliability of Korb's methodology. *See Robinson*, 923 S.W.2d at 556. As a result, we hold that the trial court did not abuse its discretion by admitting Korb's affidavits.

HealthTronics also objected in the trial court and on appeal "to the admissibility of the conclusory and unsupported statements in the Affidavits of Derek Davis purporting to support the reasonableness of the conflicting testimony and opinions advanced by Mr. Korb." Although HealthTronics failed to point out the specific objectionable statements in Davis's affidavits and did not obtain a ruling on this objection at the hearing, *see* Texas Rule of Appellate Procedure 33.1, Texas law allows a legal-sufficiency challenge to expert testimony that is speculative or conclusory on its face, even in the absence of a valid objection to its admissibility.[6] *See Coastal Transp. Co.*

---

[6] A general objection to evidence as a whole, which does not specify the objectionable portion, is properly overruled if any part of that evidence is admissible. *Speier v. Webster College*, 616 S.W.2d 617, 619 (Tex. 1981) (holding trial court did not abuse discretion by admitting chart into evidence that contained inadmissible portion because party did not specifically identify objectionable portion); *accord Austin v. Weems*, 337 S.W.3d 415, 423 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding trial court properly overruled objection to police report that contained admissible evidence because party did not specifically identify objectionable portions); *General Motors Corp. v. Harper*, 61 S.W.3d 118, 126 (Tex. App.—Eastland 2001, pet. denied) (holding trial court properly overruled objection to patents containing both hearsay and admissible evidence because party did not specifically identify hearsay statements).

15

*v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). Davis testified that "from [my] review of the affidavit of Richard Korb and *from my personal knowledge* of his work over the last 17 months, it is my opinion that his hours and fees are reasonable and were necessary for the proper representation and defense of his long-time client, Lisa Laser." (Emphasis added.) To the extent that HealthTronics asserts that this statement and any other statements in Davis's affidavits are conclusory and unsupported opinions "purporting to support the reasonableness of the conflicting testimony and opinions advanced by Mr. Korb," we disagree. Davis's opinions are not speculative or conclusory; he "did not simply state a conclusion without any explanation." *See Arkoma Basin*, 249 S.W.3d at 389. He gave a detailed explanation of the work involved in the case based on his personal knowledge.[7] Consequently, we hold that the trial court did not abuse its discretion in admitting Davis's affidavits into evidence.

**Sufficiency of the evidence supporting the fee award**

We next address HealthTronics's second argument—that Lisa Laser failed to carry its burden of proof on reasonableness of the fees. This argument is intertwined with HealthTronics's argument that the attorney affidavits were inadmissible. In essence, HealthTronics argues that the trial court should have disregarded the affidavits, and therefore, Lisa Laser presented no evidence or insufficient evidence to support the fee award. Because we found that the trial court properly admitted the affidavits, we will analyze whether the affidavits provided sufficient evidence that Korb's hourly rate and number of hours spent on the case were reasonable.

---

[7] HealthTronics has never objected to Davis's testimony about his own rates and hours.

16

When reviewing legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit evidence favorable to the trial court's decision if a reasonable factfinder could and disregard all contrary evidence that a reasonable factfinder could ignore. *Id.* at 827. We will sustain a no-evidence complaint when the record shows that (1) there is a complete absence of a vital fact, (2) the court is barred by law or the rules of evidence from considering the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Service Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). More than a scintilla of evidence exists if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* When a party attacks the factual sufficiency of the evidence on an adverse finding on an issue upon which the other party had the burden of proof, the attacking party must show that the evidence is insufficient to support the finding. *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 201 (Tex. App.—Austin 2005, pet. denied). We must consider and weigh all the evidence, and we should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We now turn to the question of whether Korb's and Davis's affidavits provided sufficient evidence for the trial court's judgment that Korb's fees were reasonable.[8] Under

---

[8] HealthTronics only challenges the evidence related to Korb's hourly rate and hours expended, not Davis's.

California law, Lisa Laser only needed to provide credible evidence of the reasonable hourly rate and the number of hours reasonably expended, and it relied on Korb's affidavits and support from Davis's affidavits to do so. As discussed above, Davis's opinion that Korb's fees and hours were reasonable is legally sufficient even under Texas law about the sufficiency of expert testimony because Davis provided an extensive explanation of the facts upon which his opinion was based, as well as an explanation of his qualifications. As for the sufficiency of Korb's testimony, HealthTronics contends that Korb is an interested witness and his testimony is so self-contradicting and inconsistent that it does not even raise a fact issue. HealthTronics argues that an interested witness's testimony can never do more than raise a fact issue, even when it is clear, direct, and positive, and free from contradictions.

HealthTronics misstates the law concerning an interested witness's testimony. The testimony from an interested witness can be taken as true as a matter of law, if it is clear, direct and positive, not contradicted by any other witness or attendant circumstances, and free from contradiction, inaccuracies, and circumstances tending to raise suspicion. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam). This is especially true when the opposing party had the means and opportunity of disproving the testimony, if it is not true, and failed to do so. *Id.* But if the uncontradicted evidence is unreasonable, incredible, or questionable because "there are circumstances in evidence tending to discredit or impeach the testimony of the interested witness," the testimony only raises a question of fact to be decided by the factfinder. *Id.* In other words, there is no circumstance in which the testimony is insufficient to raise a fact issue, as HealthTronics argues. The trial court, as factfinder, is the sole judge of the credibility of the witnesses

18

and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819. As the reviewing court, we may not impose our own opinion to the contrary. *Id.*

In his affidavits, Korb testified that $325.00 per hour (the highest rate Korb charged Lisa Laser for work on the Texas suit) was "well within the customary rates for an attorney practicing in my region, particularly for an attorney with more than fifteen years of relevant experience such as myself." He noted that many attorneys at his level in his region bill at an hourly rate of more than $400.00 per hour. Korb had been practicing for approximately 29 years at the time he submitted the affidavits. He testified that his practice is primarily civil litigation with an emphasis on business-related disputes and commercial litigation, and he has served as lead counsel in well over 150 civil cases and approximately six appeals. He explained in his May 21, 2010 affidavit that his billing rate on the case had been $325.00 per hour through the end of March 2010, but that when he began a solo practice, he further discounted his rate to $275.00 per hour because Lisa Laser has to employ two sets of attorneys until the Texas case is resolved. The April 2010 invoice was the only invoice submitted with the May 21, 2010 affidavit showing the $275.00 hourly rate.

Korb testified that Lisa Laser had paid him for the services reflected in the documents that he attached to show his time entries, which included the date, a description of the work done, and the time spent. In addition, he stated that the entries included with his fee application constituted only part of the fees that he billed because he excluded some fees that could arguably be recovered by the prevailing party. As explained above, after our decision in *Lisa Laser II*, Lisa Laser filed a supplemental motion for fees seeking payment for certain fees excluded in its first motion. It based this supplemental request on a California Court of Appeals decision issued in November 2010,

19

which clarified that an appropriate fee award includes fees for "work done while the case was under [the trial court's] jurisdiction." *PNEC Corp.*, 118 Cal. Rptr. 3d at 736.

In his May 4, 2011 affidavit filed in support of Lisa Laser's supplemental motion for fees, Korb explained that he was still excluding various fees from his fee application that arguably could have been included. He excluded most of his research and investigation, including research of Texas law and trial and appellate procedure. He excluded all services rendered in connection with Lisa Laser's filing of a separate suit in California. There were also hours of service he omitted from his bill because he wanted to avoid or minimize duplication because he and Davis were both working on the case. He testified that he omitted at least 90 hours of time over 2.7 years "in the spirit of 'reasonableness.'"

By the time of his May 4, 2011 affidavit, he had returned to billing Lisa Laser at his original rate of $325.00 per hour.[9] He attached "true and correct cop[ies] of the hours and services I rendered and billed the client for, related to the litigation filed by Health[T]ronics in Texas" to both affidavits. Those documents reflect that he billed Lisa Laser for $86,441.55 ($67,294.05 submitted with the first motion for fees; $19,147.50 submitted with the second motion for fees). The documents submitted with the first motion for fees show that Korb billed Lisa Laser for 191.4 hours at $325.00 per hour (totaling $62,205.00) and 16.8 hours at $275.00 per hour (totaling $4,620.00).[10]

[9] On April 16, 2010, the Texas Supreme Court issued its opinion that the forum-selection clause required the suit to be maintained in California.

[10] When calculating the number of hours that Korb billed, we note that there is a slight discrepancy in the total dollar amount requested in the affidavit from the total dollar amount that is derived by adding up the subtotaled hours for each month and multiplying by the hourly rate. Adding $62,205.00 to $4,620.00 equals $66,825.00, which is $469.05 less than the $67,294.05 requested in the affidavit. This de minimis discrepancy of approximately 1.4 hours at the $325.00

The documents submitted with the supplemental motion for fees show that Korb billed Lisa Laser for 14.7 hours of pre-litigation fees at $325.00 per hour (totaling $4,896.00) and for 43.62 hours of fees related to discovery, appeal, and research at $325.00 per hour (totaling $14,251.50), for a total of $19,147.50.

In response, HealthTronics offered no evidence to show that any of Korb's hourly rates are not reasonable fees for comparable legal services in the community where Korb is located. Instead, HealthTronics asserts that Korb's return to an hourly billing rate of $325.00 in his second affidavit is inconsistent with his statement in his first affidavit that he had discounted his rate to $275.00 while Lisa Laser was subject to suit in Texas as well as California. Although Korb does not explain precisely when he returned to an hourly billing rate of $325.00, his return to a higher rate after succeeding in obtaining a dismissal of the Texas case is not a "circumstance[] tending to cast suspicion" upon his testimony.[11] *Ragsdale*, 801 S.W.2d at 882. At most, the change in Korb's hourly rate creates a fact issue, which the trial court resolved in Lisa Laser's favor. *See City of Keller*,

---

rate is not enough to render Korb's testimony incompetent. As the factfinder, the trial court may resolve inconsistencies in a witness's testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

[11] Although the statements attached to his supplemental affidavit show that he billed Lisa Laser at a rate of $325.00 per hour for work done in April 2010, instead of $275.00 (as shown on his documentation for April 2010 work that was attached to the first motion for fees), the supplemental statement adds only 1.9 hours to his April 2010 work, resulting in a charge of an additional $95.00. However, there appears to be a mathematical error in Korb's calculation of hours. His total of 43.62 hours should actually be 44.92 hours, a difference of 1.3 hours. If the statement is recalculated to reflect the correct number of hours (44.92 - 1.9 = 43.02 x $325.00 = $13,981.50) and the correct billing rate of $275.00 for April 2010 (1.9 x $275.00 = $522.50), the correct total for Korb's research and discovery hours would be $14,504.00, instead of the $14,176.50 shown on the statement. In other words, Korb actually requested $327.50 less than his statement reflects that he worked, even accounting for a lower billing rate in April 2010. This de minimis discrepancy is again the sort of inconsistency that the trial court, as factfinder, resolves. *See McGalliard*, 722 S.W.2d at 697.

21

168 S.W.3d at 819 (noting that factfinder is sole judge of witness's credibility and weight to give to witness's testimony); *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (explaining that factfinder "may resolve inconsistencies in the testimony of any witness").

To prevail on a no-evidence challenge here, HealthTronics must point to evidence that conclusively establishes the unreasonableness of Korb's hourly rate. *See Service Corp. Int'l*, 348 S.W.3d at 228. To prevail on a factual-sufficiency challenge, HealthTronics must show that the overwhelming weight of the evidence demonstrates that Korb's hourly rate was clearly unreasonable. *See Cain*, 709 S.W.2d at 176. HealthTronics's unsuccessful attempt to paint the affidavits as too inconsistent to be reliable does not amount to *any evidence*, much less conclusive evidence, disproving the reasonableness of any of the hourly rates charged by Korb in the Texas suit. We conclude that legally and factually sufficient evidence supports the reasonableness of the hourly rates.

Similarly, although HealthTronics attempts to use statements made by Korb in his affidavit to show that the hours expended were unreasonable, it again offers *no evidence* to disprove the reasonableness of the time spent—much less evidence that conclusively disproves this vital fact. HealthTronics does not identify any specific time entries that it contends were unreasonable. Instead, it mischaracterizes statements that Korb made. For example, HealthTronics asserts that Korb admitted that: (1) his involvement in the Texas litigation led to many duplicative efforts and was not integral because of his longstanding relationship with the client; (2) the case was fairly straightforward, but the fees were excessive because he did not trust local counsel's competency; and (3) extensive discovery had been conducted in Texas that the parties had agreed could be used in the California suit. In fact, Korb testified that:

22

- He is Lisa Laser's personal corporate counsel, and Lisa Laser only had to hire a second law firm because HealthTronics chose to file this suit in Texas, despite the mandatory forum-selection clause in the parties' contract. Neither he nor Lisa Laser knew Davis before this suit, so Korb had to "closely supervise everything he did for a long time until *our client* became more comfortable with the situation." (Emphasis added.)

- Because Korb "had the relationship with, and trust of, the client, [he] had to travel to Texas and defend [Lisa Laser's president] at his two-day deposition in Texas," which HealthTronics had refused to either postpone or take in California, where Lisa Laser's president works.

- Although the legal issues in the case were "fairly straight-forward," each substantive issue had to be analyzed under both Texas and California law because of the choice-of-law provision in the contract. He also "had to familiarize [himself] with Texas law, discovery, pre-trial and appellate procedure and practice since the client was specifically relying on my advice as his personal corporate counsel and since neither one of us had a prior relationship with Mr. Davis."

- "[T]here were many hours of service for which [Korb] did not bill the client. This was due in part to the fact that both Mr. Davis and [Korb] were working on the file and [Korb] wanted to avoid or minimize duplication. As a consequence, there were many tasks such as telephone conferences and co-drafting efforts where [Korb] did not bill [his] time or where [Korb] significantly reduced [his] billable hours. [Korb] omitted at least **90** hours of time over the past 2.7 years in the spirit of reasonableness."

- Korb included time to prepare for and defend against depositions *noticed by HealthTronics*. He recognized that the parties stipulated that depositions and discovery from the Texas case could be used in any action filed in California, but at the time of the affidavits, it was unclear whether a California court would honor the stipulation. In addition, the stipulation did not address the issue of attorneys' fees. He stated that if the depositions were allowed by a California court and the parties did not have to be re-deposed, he would omit that time from any fee application in California.

HealthTronics has neither pointed out any actual conflict in the evidence before the trial court nor presented any evidence that conclusively rebuts the evidence and testimony offered

23

by Korb about the reasonableness of the hours expended.  We conclude that legally and factually sufficient evidence supports the reasonableness of the hours expended by Korb.  Consequently, we hold that the trial court did not abuse its discretion by awarding attorneys' fees supported by evidence of a reasonable hourly rate and a reasonable amount of hours spent on the case.

**Entitlement to all fees incurred in the Texas case**

In its third argument, HealthTronics complains that Lisa Laser did not adequately segregate its fees incurred in connection with the motion to dismiss, which it asserts are the only fees that this Court held were allowed in *Lisa Laser II*.  We disagree with HealthTronics's reading of our opinion in *Lisa Laser II*.  In that case, we cited *PNEC Corp.* with approval, including the California court's holding that even though the suit dismissed from California could be refiled in the state of Washington, "the trial court did not err in awarding contractual attorneys' fees pursuant to section 1717 'for the work done while the case was under its jurisdiction.'" *Lisa Laser II*, 2011 WL 1237639, at *4 (quoting *PNEC Corp.*, 118 Cal. Rptr. 3d at 735-36).  While we concluded that Lisa Laser's "litigation objectives" were met in Texas when it obtained dismissal of the entire proceeding for purposes of determining that Lisa Laser was a prevailing party, we did not suggest that any award of attorneys' fees should be limited to fees incurred in connection with Lisa Laser's motion to dismiss.

Now that the issue is squarely before us, we reaffirm that Lisa Laser is entitled to its reasonable attorneys' fees for work done in Texas related to the Texas suit.  California courts have held that "[p]revailing party attorney fees should be awarded based on the contract language, the statutory language, and the fact of dismissal of the case, not on speculation [about the parties' future

24

conduct]." *Profit Concepts Mgmt., Inc. v. Griffith*, 76 Cal. Rptr. 3d 396, 400 (Cal. Ct. App. 2008); *accord PNEC Corp.*, 118 Cal. Rptr. 3d at 734. In *PNEC Corp.*, the court held that the contract language providing for an award of attorneys' fees and collection costs, if the account was referred to an attorney for collection, was broad enough to entitle a defendant whose case was dismissed on forum non conveniens grounds to an award of fees that was not limited to fees incurred for work on the forum non conveniens issue.[12] 118 Cal. Rptr. 3d at 735-36. Similarly, in this case, the contract language at issue is broad enough to entitle Lisa Laser to fees incurred for all work performed by its attorneys on the case in Texas: "The prevailing party in *any legal action* brought by one party against another party and arising out of this Agreement shall be entitled, in addition to any other rights and remedies it may have, to reimbursement for its expenses, including court costs and reasonable attorneys' fees." (Emphasis added.) Following the holding in *PNEC Corp.*, Lisa Laser is entitled to recover reasonable attorneys' fees (and other expenses) for all work done while the case was under the Texas courts' jurisdiction.

HealthTronics has pointed us to no other California authority supporting the proposition that Lisa Laser is entitled to recover only its fees incurred in connection with its motion to dismiss based on the mandatory forum-selection clause. In California, a "prevailing party is entitled to fees for any action 'on the contract,' whether incurred offensively or defensively." *Turner v. Schultz*, 96 Cal. Rptr. 3d 659, 663 (Cal. Ct. App. 2009). In this case, Lisa Laser filed counterclaims in the

___

[12] The contract at issue in *PNEC Corp.* provided that: "The Customer and the undersigned agree that if the account is referred for collection to an attorney, the undersigned will pay reasonable attorney's fees and costs of collection." *PNEC Corp. v. Meyer*, 118 Cal. Rptr. 3d 730, 732 (Cal. Ct. App. 2010).

25

Texas case and ultimately filed a suit in California asserting those claims while its mandamus on the forum-selection clause was pending before the Texas Supreme Court. There is also evidence in the record that HealthTronics chose to pursue written discovery and to begin noticing depositions in Texas during the pendency of the forum-selection mandamus. If HealthTronics had not attempted to circumvent the mandatory forum-selection clause by filing suit in Texas, Lisa Laser would not have needed to pursue its counterclaims or defend against discovery in Texas. As a result, HealthTronics "must accept the consequences of forcing defendants to fight on two fronts." *Id.* at 667.

We conclude that California law required the trial court to award Lisa Laser attorneys' fees for all work done related to the Texas case while that case is under the jurisdiction of Texas courts, including pre-litigation work, since the Texas case was filed first. Drawing this jurisdictional line makes sense. We note that although HealthTronics asserts on appeal that Lisa Laser sought to recover fees related to its pursuit of its claims in the California lawsuit, it has pointed out no specific time entries related to the California suit, and we discovered none in our review of the time entries that Korb submitted. We conclude that there is legally and factually sufficient evidence that Korb appropriately segregated his fees for the work done on the Texas case from his fees for the work done on the California case. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) (holding that fee claimant must segregate recoverable from unrecoverable fees).

We further note that the California trial court appears to have drawn the same jurisdictional line upon conclusion of the trial there. The California court explained in its post-trial orders that it had "reviewed Mr. Korb's declaration and determined by math and inference that he expended 379 hours on the Texas litigation, which efforts have already been the subject of Texas

26

court review and award." Lisa Laser submitted a total of only 266.52 hours for Korb to the Texas trial court, so there is no danger of double recovery. Consequently, as the prevailing party in the Texas suit, Lisa Laser should recover all fees it incurred for work done on the Texas suit, including fees related to (1) Lisa Laser's pre-suit negotiation with HealthTronics; (2) Lisa Laser's counterclaims in the Texas suit; (3) discovery conducted in the Texas suit that the parties stipulated could be used in the California suit, if allowed by the California court; and (4) settlement negotiations. The trial court did not abuse its discretion when it awarded Lisa Laser attorneys' fees for work related to the Texas suit that was performed before the dismissal of HealthTronics's suit against it in Texas and for the appeals after the dismissal.

For all the reasons stated above, the trial court did not err by awarding attorneys' fees to Lisa Laser. We overrule HealthTronics's sole issue on appeal.

## CONCLUSION

Having overruled HealthTronics's sole issue, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: August 31, 2012

27