

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00103-CV

**IN THE INTEREST OF M.U.A.T.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-00823
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
               Irene Rios, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: August 10, 2022

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child, Matt.[1] Mother challenges the sufficiency of the evidence supporting the statutory predicate grounds for termination of her parental rights. We affirm.

### BACKGROUND

The Department of Family and Protective Services ("the Department") initially became involved in the underlying case in April 2020, when the Department received a report of domestic violence between Mother and Father in the presence of the child.

---

[1] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and the child using the pseudonym "Matt" or as "the child." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). The trial court's order terminated both Mother's and Father's parental rights to the child, but only Mother appeals the trial court's order.

On April 23, 2020, the Department filed a petition seeking temporary managing conservatorship of Matt and termination of Mother's and Father's parental rights. The trial court granted the Department temporary managing conservatorship, and the Department placed Matt with his paternal grandparents.

On January 14, 2022, a bench trial was held before an associate judge ("the first trial") who rendered an order terminating Mother's parental rights. Mother timely filed a motion requesting a de novo trial before the referring district court. *See* TEX. FAM. CODE ANN. § 201.015; *see also id.* § 201.2042.

On February 15, 2022, the trial court held a bench trial de novo. The reporter's record from the first trial was admitted into evidence without objection. *See id.* § 201.015(c) ("The referring court may also consider the record from the hearing before the associate judge . . . ."); *see also id.* § 201.2042. The reporter's record contained testimony from Danyel Harrigan, the Department's caseworker, and Mother. At the de novo trial, the trial court heard testimony from Matt's paternal grandmother ("Grandmother"), Harrigan, and Mother.

On February 17, 2022, the trial court signed an order terminating Mother's parental rights to Matt. Specifically, the trial court terminated Mother's parental rights based on statutory grounds (N) and (O) in section 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). The trial court also found that it was in Matt's best interest to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate

finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

## DISCUSSION

The trial court terminated Mother's parental rights under statutory grounds (N) and (O) in section 161.001(b)(1) of the Texas Family Code. Mother challenges the sufficiency of the evidence supporting each statutory ground.

## STATUTORY GROUNDS

Assuming a valid best-interest finding, the trial court may order termination of the parent-child relationship if the trial court finds by clear and convincing evidence that the parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262" of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

"Texas courts generally take a strict approach to subsection (O)'s application." *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet denied). "A parent's

failure to complete one requirement of her family service plan supports termination under subsection (O)." *Id.* (alterations omitted). Partial compliance with a court-ordered service plan does not constitute compliance under statutory ground (O).[2] *J.F.C.*, 96 S.W.3d at 278; *J.M.T.*, 519 S.W.3d at 267 (alterations omitted) ("[S]ubstantial or partial compliance with a court-ordered family service plan is insufficient to avoid termination."). "Ground (O) does not quantify any particular number of provisions of the family service plan that a parent must not achieve in order for the parental rights to be terminated or the degree of a parent's conduct that will be deemed to be a failure to achieve a particular requirement of the plan." *In re B.H.R.*, 535 S.W.3d 114, 122 (Tex. App.—Texarkana 2017, no pet.).

Subsection 161.001(d), however, precludes termination under subsection (O) if the parent proves by a preponderance of the evidence that: (1) she was unable to comply with specific provisions of the court order incorporating the service plan; and (2) she made a good faith effort to comply with the order and her failure to comply is not attributable to any fault of her own. TEX. FAM. CODE ANN. § 161.001(d); *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019).

Only one predicate ground finding under subsection 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground.

Harrigan testified Mother's service plan required her to take a drug assessment, pass random drug tests, participate in and complete drug treatment, maintain employment, complete a

---

[2] Citing *In re S.M.R.*, 434 S.W.3d 576 (Tex. 2014), Mother argues her rights should not be terminated because she "did enough" of her family service plan. Mother misreads *S.M.R.* In that case, the Department argued it conclusively established, as a matter of law, statutory ground (O) for failure to comply with a service plan even though the trial court did not terminate parental rights under statutory ground (O). *In re S.M.R.*, 434 S.W.3d 576, 582 (Tex. 2014). The *S.M.R.* court held "when questions of compliance and degree are raised, and the trial court declines to terminate on this ground, the evidence is not conclusive; it is disputed." *Id. at* 584. Here, after hearing the evidence, the trial court terminated Mother's parental rights on statutory ground (O).

psychosocial evaluation, and participate in and complete individual counseling, parenting classes, and domestic violence classes.[3] These services were ordered by the trial court with an express admonishment in the order stating failure to fully comply with the order could result in termination of Mother's parental rights. Mother admitted she was aware of her service plan and had been warned multiple times that failure to complete her service plan could result in termination of her parental rights.

Harrigan testified Mother did not take the psychosocial evaluation, did not complete drug treatment or individual counseling, and had not maintained employment. According to Harrigan, Mother engaged in drug treatment, but was unsuccessfully discharged. Mother quit going to individual counseling after only one session and testified she was not employed at the time of trial.

Harrigan further testified Mother only completed three drug tests during the pendency of the case. Mother "failed to cooperate with the drug testing process for the hair follicle" test in August 2020. Mother tested positive for marijuana in September 2020. In October 2020, Mother attempted to use fake urine for her drug test, and, when confronted, became aggressive with staff at the testing facility. Mother was arrested and banned from that testing facility as a result of the altercation. Although Mother tested negative for drugs in April 2021, she failed to comply with the Department's requests to take drug tests after April 2021. When Harrigan asked why Mother would not comply with the Department's requests for her to take drug tests, Mother responded "she just did not want to."

Mother admitted she did not complete her services, but testified "half of this [was her] fault." On appeal, Mother claims she was unable to comply with her service plan because: (1) she

---

[3] A psychological or psychiatric evaluation, individual counseling, parenting classes, and drug and alcohol assessment and testing were expressly ordered in the trial court's Agreed Temporary Order Following Adversary Hearing rendered on May 7, 2020.

did not receive referrals for services for the first two months of the case; (2) she did not have transportation to the drug testing facility, her drug treatment appointments, or her individual counseling appointments; and (3) she did not receive referrals to complete her services after the associate judge terminated her parental rights, but before the hearing de novo before the district court. *See* TEX. FAM. CODE ANN. § 161.001(d) (stating a court may not terminate parental rights for failure to comply with court-ordered services if the parent proves by a preponderance of the evidence that she was unable to comply and she made a good faith effort to comply and her failure to comply was not her fault).

While the Department recognized Mother did not receive referrals for services in the first two months of the case, Mother failed to explain why she was not able to complete her services even though the trial court extended the case for a full year.[4] Mother admitted "a big reason" the trial court granted the first six-month extension was so she would have more time to complete her services.

Next, Mother testified she did not have transportation to some of her appointments required by her service plan. However, Harrigan testified Mother was provided information on how to obtain "Medicaid transportation services" to her appointments. Mother stated she could only use the transportation services for doctor's appointments, but Harrigan rebutted a Department employee contacted the transportation services and confirmed Mother could use the transportation services for her drug test appointments. Harrigan further testified, to her knowledge, Mother never utilized the transportation services available to her. The trial court, being the sole judge of the credibility of the witnesses and the weight to be given their testimony, was within its right to

---

[4] The supreme court's emergency order responding to the COVID-19 pandemic granted the trial court authority to extend the case beyond the statutory deadlines.

believe Harrigan and disbelieve Mother's contradicted and self-serving testimony. *See HealthTronics*, 382 S.W.3d at 582.

Finally, Mother argues her failure to comply with her service plan was not her fault because the Department did not provide referrals for services after the associate judge rendered an order terminating her parental rights. When asked whether she was aware she could complete her services after the first trial, Mother testified as follows:

Counsel: Were you aware that you could work services in between that trial and today?

Mother: Honestly, no, because I thought since rights were terminated and since that was like the last discussion since the Court, I thought that, you know, there was kind of just like no point. I didn't see—I didn't think—no. No, because I though my rights were terminated and I didn't think me doing any of this from the time right now to last hearing that it would make any type of difference, if that makes sense.

Counsel: In addition, you heard the testimony [from Grandmother] that there was a goodbye visit scheduled in January 2022. Did you participate in that?

Mother: I did, yes. It was a two-hour visit like they said.

Counsel: Did you understand from that that you were not going to be offered any more services?

Mother: No. Well, like—I understood that the visit was just a goodbye visit, but for services, no.

Mother's testimony does not place blame on the Department's "lack of referrals" for her failure to work on her services in the one month between the trials. Instead, Mother's testimony indicates she failed to work on her services between the trials because she thought the associate judge had terminated her rights and there was "no point" in doing the services. However, Mother filed a motion for a de novo trial before the district court the same day the first trial concluded. Although Harrigan testified Mother would have to seek resources on her own after the associate judge ordered termination in the first trial, Harrigan stated she furnished Mother with information

on a community resource clinic providing drug services and counseling. While the community resource clinic had a record of Mother, Harrigan testified Mother had not started services with the clinic at the time of the de novo trial. Further, as mentioned above, Mother was given ample time to complete her services and failed to explain why she could not do so within the year and a half since she first received referrals for her services.[5]

Here, the evidence shows that Mother did not complete her psychosocial evaluation, drug treatment, individual counseling, did not comply with her drug testing requirements, and did not maintain employment as required by her court-ordered service plan. In addition, the record supports the trial court's finding that Mother did not prove by a preponderance of the evidence she was unable to comply with the plan and that she made a good faith effort to comply and failure to comply with the court-ordered service plan is not attributable to any fault of her own. *See* TEX. FAM. CODE ANN. § 161.001(d).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the evidence is legally and factually sufficient to support the trial court's termination findings under subsection 161.001(b)(1)(O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Because the evidence is legally and factually sufficient to support the trial court's finding on statutory ground (O), we need not consider whether the evidence would support termination under statutory ground (N). *See A.V.*, 113 S.W.3d at 362.

### CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice

---

[5] Harrigan testified referrals and authorizations for Mother to participate in drug treatment and counseling were issued on July 10, 2020.