

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00423-CV

**IN THE INTEREST OF Z.K.T.W. AND Z.K.R.**

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00921
Honorable Richard Garcia, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: December 11, 2019

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her sons,

Zach and Zane.[1]    The only issue presented by Mother is whether the evidence is legally and

factually sufficient to support the trial court's finding that termination is in the children's best

interest.  We affirm the trial court's order.

## BACKGROUND

The Texas Department of Family and Protective Services (the "Department") initially

became involved in the underlying case on April 26, 2018, when the Department received a report

---

[1] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and the children by aliases.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  In this opinion, we refer to Z.K.T.W. as "Zach" and Z.K.R. as "Zane."  The "Father" referred to in this appeal is Zane's presumed father.  Evidence produced at trial shows that Zach's alleged father is deceased.  The trial court's order terminates both Mother's and Father's parental rights, but only Mother appeals.

that the San Antonio Police Department placed Zane in the Children's Shelter after Father, with whom Zane was residing, was arrested for murder. Department investigator Hannah Adkison made contact with Mother but Mother did not retrieve Zane from the Children's Shelter within the arranged time frame. Later that day, Adkison went to the apartment where Mother was residing to determine whether Mother's living arrangements were safe for Zane. When asked about other children, Mother initially did not disclose Zach's existence. When questioned further, Mother admitted she had a second child but refused to disclose Zach's location. Eventually, Mother informed Adkison that Zach had been with a babysitter for a week. Mother provided the babysitter's first name and address but Adkison was not able to verify the information or locate Zach that day. Mother's removal history with the Department, which related to drug use, led to concerns of current drug use. However, Mother refused to submit to a drug test or take part in a safety plan, which ultimately led to the Department's removal of Zach from Mother's custody. On May 7, 2018, the Department filed an amended petition to terminate parental rights.

The trial court held a bench trial on April 17, 2019 and May 31, 2019, at which Mother appeared in person and testified on her own behalf. The trial court also heard testimony from Adkison, Department caseworkers Crystal Jones and Mark Gomez, and Father. On June 13, 2019, the trial court signed an order terminating Mother's parental rights to both Zach and Zane.

## STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex.

2003). In this case, the trial court terminated Mother's parental rights on six predicate grounds.[2] The trial court also found termination of Mother's parental rights was in the best interest of the children.

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency). Further, in a trial to the bench, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Health Tronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We therefore defer to the trial court's judgment regarding credibility determinations. *Id.* at 823-24.

## BEST INTEREST OF THE CHILDREN

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In*

---

[2] The trial court found Mother

> knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, …; … engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, …; … had her parent-child relationship terminated with respect to another child based on a finding that the mother's conduct was in violation of § 161.001(b)(1)(D) or (E), Texas Family Code, …; … constructively abandoned the children …; … failed to comply with the provisions of a court order …; … [and] used a controlled substance … in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program[,] or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance …[.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (N), (O), (P).

*re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also apply the *Holley* factors to our analysis.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—

---

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

## DISCUSSION

Mother contends the evidence is legally and factually insufficient to support the trial court's determination that termination of her parental rights is in Zach's and Zane's best interest. Taking into consideration the above listed standards and factors, we review the evidence presented during the trial on the merits.

Department caseworker Crystal Jones testified she reviewed the family service plan with Mother but Mother refused to sign the plan. Mother's service plan required that she undergo a drug and alcohol assessment and follow any recommendations resulting from the assessment; submit to random drug testing; take part in parenting classes; and undergo a psychosocial assessment and follow any recommendations resulting from the assessment. According to Jones, Mother completed the drug assessment and received a certificate from the drug treatment program. However, Jones testified Mother received the certificate based upon her own self-reporting of negative drug test results which was not accurate. Mother underwent a psychological assessment but did not attend the recommended counseling or submit to random drug testing.

Jones testified that in order to visit the children, Mother "had to test clean." However, Mother tested positive for benzodiazepine on at least one occasion. Jones testified Mother attempted to excuse the positive test result by claiming it was caused by over-the-counter medications. However, according to Jones, the medications Mother told Jones she took — ibuprofen, nasal spray, and cough medicine — could not cause a positive result for benzodiazepine. Jones also testified that Mother refused to submit to drug tests and then "she just wouldn't go, as well." As a result of not submitting to drug tests or testing positive, Mother visited the children only five times out of a possible thirty-five visits. When questioned about the number of times she

asked to see her children, Mother blamed her limited visitation on a lack of communication with her caseworker.

The second Department caseworker, Gomez, testified that because Mother requested a parent-child visit, she was required to submit to a drug test on April 30, 2019. However, Mother "did not show." Gomez also attempted to administer an "instant drug test" to Mother on May 30, 2019, but Mother "made it difficult to administer the test." According to Gomez, Mother "was avoiding [doing] the oral swab." *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A factfinder reasonably could infer that [Mother's] failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs."); *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) ("The jury could reasonably infer that [Mother]'s failure to complete the scheduled screenings indicated she was avoiding testing because she was using drugs."); *see also In re Z.J.B.*, No., 14-18-00759-CV, 2019 WL 347474, at *7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.) (recognizing in its best-interest analysis that a father's failure to complete three scheduled drug tests during the pendency of the case and one positive drug screening weighed in favor of the trial court's finding that termination of his parental rights was in the child's best interest).

When asked about not completing her services, Mother replied, "I do not recall me not completing them." Mother testified she completed a parenting class and a substance abuse class. Mother also testified she had stable housing as she was currently living with her uncle in a one-bedroom apartment and was on the list for her own housing. However, Jones testified Mother had "been bouncing around from place to place" and did not have stable housing. Further, Gomez testified that when he took over the case, Mother was living with her uncle but "not legally" as she was not listed on the lease.

Jones additionally testified that during the pendency of the case Mother was arrested twice for assault. Mother admitted that she had at least one pending assault case. Mother also acknowledged she had previously been charged with assaultive offenses and prostitution. *See In re F.M.A.*, 04-16-00318-CV, 2016 WL 4379456, at *3 (Tex. App.—San Antonio Aug. 17, 2016, pet. denied) (mem. op.) (noting that a history of drug use and an inability to maintain a lifestyle free from arrests is relevant to a trial court's best-interest determination).

At the time of the trial, the children were one and two years' old. Jones testified that at the time of removal, the children were underweight and behind on their immunizations. According to Jones, the children were initially placed in foster care but at the time of trial had been placed with fictive kin for nearly a year. Jones testified the children have bonded with their caretaker, are "always happy" when she visits, and are "doing good." Jones related the current placement is a stable environment and that the children have gained weight, are caught up with their immunizations, and are receiving ECI[4] services. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (factfinder may consider whether children have bonded with foster family and are well-cared for when children are too young to express their desires) .

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

---

[4] Early Childhood Intervention

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights.

Irene Rios, Justice