

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00066-CV

**IN THE INTEREST OF A.R., M.R., K.G.D.R., CHILDREN**

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-00255
Honorable Linda A. Rodriguez, Judge Presiding[1]

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Justice
    Patricia O. Alvarez, Justice
    Irene Rios, Justice

Delivered and Filed: August 24, 2020

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children, Amy, Mary, and Kyle.[2]  The only issue presented by Mother is whether the evidence is legally and factually sufficient to support the trial court's finding that termination is in the children's best interest.  We affirm the trial court's order.

## BACKGROUND

The Texas Department of Family and Protective Services (the "Department") initially became involved prior to February 2019 through its family-based services after Mother tested

---

[1] The Honorable Linda Rodriguez, Visiting Judge, presided over the case.

[2] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and the children by aliases.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The "Father" referred to in this appeal is Kyle's presumed father.  Evidence produced at trial shows that Amy's alleged father is deceased and that Mary's alleged father could not be located.

positive for the use of methamphetamine, marijuana, and cocaine during her pregnancy with Kyle. On February 7, 2019, the Department filed a petition to terminate parental rights.

The trial court held a bench trial on January 13, 2020, at which Mother appeared in person and testified on her own behalf. The trial court also heard testimony from Department caseworker Mark Gomez and Father. On February 26, 2020, the trial court signed an order terminating Mother's parental rights to all three children.

### STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court terminated Mother's parental rights on five predicate grounds.[3] The trial court also found termination of Mother's parental rights was in the best interest of the children.

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency). Further, in a trial to the bench, the trial court is the sole judge of the credibility of

---

[3] The trial court found Mother

> knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children[;] … engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children[;] … constructively abandoned the children[;] … failed to comply with the provisions of a court order[;] … [and] used a controlled substance … in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program[,] or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance …[.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P).

witnesses and the weight to be given their testimony. *Health Tronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We therefore defer to the trial court's judgment regarding credibility determinations. *Id*. at 823-24.

## BEST INTEREST OF THE CHILDREN

When considering the best interest of the children, we recognize the existence of a strong presumption that the children's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the children in a safe environment is in the children's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether the children's parent is willing and able to provide the children with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also apply the *Holley* factors to our analysis.[4] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

in the child[ren]'s best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child[ren]." *Id*.

Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the children's best interest. *In re C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by [her] past conduct and determine whether termination of parental rights is in the child[ren]'s best interest." *Id*.

## DISCUSSION

Mother contends the evidence is legally and factually insufficient to support the trial court's determination that termination of her parental rights is in Amy's, Mary's, and Kyle's respective best interest. Taking into consideration the above listed standards and factors, we review the evidence presented during the trial on the merits.

At the time of the trial, Amy, Mary, and Kyle were ten, four, and one years' old, respectively. According to Gomez, the children were initially removed from Mother's care and placed with Kyle's paternal grandmother ("Grandmother") because Mother tested positive for the use of methamphetamine, marijuana, and cocaine during her pregnancy with Kyle, and Father was placed on community supervision for a DWI incident that occurred when Kyle was in the vehicle.

The service plan for Mother required that she undergo drug assessment and treatment and complete a psychological assessment. Mother did not meet the requirement of undergoing drug assessment or treatment but did complete the psychological assessment. As a result of the psychological assessment, Mother was required to take part in individual counseling and achieve

sobriety. Mother attended four individual counseling sessions but then stopped going. Further, according to Gomez, Mother failed to show she achieved sobriety. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (evidence that the appellant failed to comply with the court-ordered service plan supported the trial court's best-interest determination); *see also In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *9 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (holding failure to complete family service plan is indicative of failure to prioritize child).

Gomez explained that he became the caseworker in March 2019, and that Mother's service plan allowed weekly, one-hour visits with the children. However, those visits were contingent upon Mother obtaining a "clean" result from a urinalysis test. Gomez testified that Mother visited with the children once in March 2019 but had not met the requirements for a visit since. *In re R.B.*, 200 S.W.3d 311, 316 (Tex. App.—Dallas 2006, pet. denied) (indicating that a parent's missed visits serve as an example of acts or omissions indicating termination is in the children's best interests). Mother did not take a single drug test since Gomez became the caseworker although Gomez requested Mother take drug tests throughout the pendency of the case. Gomez most recently requested Mother take a drug test the week prior to trial but Mother did not do so. Mother last took a drug test during the family-based services case in December 2018. She tested positive for cocaine and marijuana at that time. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use and failure to comply with a service plan in holding the evidence supported the best-interest finding).

At the time of the trial, all three children were placed together with Grandmother, who is now a licensed foster caregiver, with the intention that Grandmother will adopt Amy and Mary and serve with Father as a joint managing conservator for Kyle. According to Gomez, the children are doing well in their placement. The only problematic behavior displayed by Amy is that she struggles to wake in the morning for school. Amy is protective of her little sister and enjoys video

games.  Gomez described the two older children as "very cute" and "open" and related that they warm up quickly.  Gomez further testified that the children are bonded to each other and that Grandmother is able to meet the physical and emotional needs of all three children.  *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (factfinder may consider whether children have bonded with foster family and are well-cared for when children are too young to express their desires).

According to Mother, she has not visited with her children since March 2019 because the Department would not let her, "I think for the drug test."  Mother explained that she had not taken any drug tests since December 2018 because she was "confused and scared."  Mother also explained that several times she attempted to go to the facility to take a drug test, she was told she was not in the system or the facility did not have her paperwork.  Mother denied using any drugs other than marijuana but admitted she last smoked marijuana "a couple months ago … a long time ago, like months."  *See In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at \*5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.) ("Continued illegal drug use [by the parent] ... is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child.").

Mother acknowledged that she attended four individual counseling sessions but then stopped going.  She explained that she had an upcoming appointment for a drug assessment.  *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (concluding short duration improvements do not necessarily negate long history of irresponsible choices).  Mother further testified that she is employed.  She also testified that she moved into a house in April or May of 2019 but, at the time of trial, was living in a hotel waiting to move into an apartment.  Mother explained that she knew she was "doing some stupid things" but that she "[did not] want to lose her kids."  Mother admitted the children are doing well with Grandmother.  However, when asked why she thought it was best

for the children to have her in their lives, Mother responded, "Who else is going to be better than the mom?"

Based on Mother's past behavior, particularly her admitted continued drug use and refusals to submit to drug testing, failure to undergo a drug assessment or complete drug treatment, and failure to fully engage in and complete individual counseling as required following her psychological assessment, the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in Amy's, Mary's, and Kyle's respective best interest. Further, Mother's lack of visits with the children for over nine months because she refused to submit to drug testing could have also informed the trial court's decision that termination of Mother's rights is in the children's best interest. Additionally, that the children are doing well in their current placement with Grandmother and have bonded supports the trial court's termination finding. The trial court could also have considered the Department's plan for Grandmother's joint managing conservatorship with Father for the youngest child, as well as Grandmother's planned adoption of the two older children when determining that termination of Mother's rights is in the children's best interest. The trial court could discount any contrary evidence presented by Mother, and the contrary evidence was not such that a reasonable factfinder could not have resolved it in favor of its finding of best interest. *See id*. at 345.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights.

Irene Rios, Justice