

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00406-CV

**IN THE INTEREST OF X.L.C.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-01100
Honorable Kimberly Burley, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
    Irene Rios, Justice
    Liza A. Rodriguez, Justice

Delivered and Filed: March 16, 2022

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child, Lily.[1]  Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination was in the child's best interest.

### BACKGROUND

The Department of Family and Protective Services ("the Department") became involved in the underlying case in March 2020 because Lily tested positive for marijuana and cocaine at birth and exhibited symptoms of drug withdrawal.

---

[1] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the mother as "Mother" and the child using the pseudonym "Lily" or as "the child."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order terminates the unknown father's and Mother's parental rights to the child, but only Mother appeals the trial court's order.

On June 2, 2020, the Department filed a petition seeking temporary managing conservatorship of Lily and termination of Mother's parental rights. On June 25, 2021 and July 9, 2021, the trial court held a bench trial. The trial court heard testimony from Alysha Kraft, the Department's caseworker until October 2020; Elizabeth Torres, the Department's current caseworker; Mother; Victoria Caylor, Mother's therapist; and Foster Mother.[2] After the parties rested on the second day of trial, the trial court abated the case for forty-six days to give Mother additional time to comply with her service plan and adhere to additional orders of the trial court, including an order to test negative on random drug tests during the abeyance.

On August 24, 2021, the trial resumed and Torres testified on whether Mother complied with her service plan and the trial court's additional orders during the abeyance. After hearing Torres's testimony, the trial court terminated Mother's parental rights to Lily. Specifically, the trial court terminated Mother's parental rights based on statutory grounds (N), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P). The trial court also found it was in the child's best interest to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appealed.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

---

[2] We refer to Lily's foster mother as "Foster Mother."

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

### BEST INTEREST

Mother argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the child's best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[3]

---

[3] These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an

*See id.* § 263.307(b). We also consider the *Holley* factors.[4] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

---

appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

*Child's Desire, Age, and Vulnerability*

"When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied).

Here, Lily was less than two years old at the time of trial. Torres testified Lily is well-cared for by her foster family, "is doing extremely well" in her foster home, and has bonded with her foster family. When asked about Lily, Foster Mother testified Lily is "just the cutest baby I have ever seen in my life . . . she is just happy, content, loves music, loves to eat, very social, was very shy when she first came to me and kind of an insecure, attached little person. But now she is happy to meet and is darling." Foster Mother further stated her oldest son—who is nearly ten years old—"thinks [Lily] hung the moon" and Lily "is his favorite person."

The record reflects that Lily was removed from Mother at birth because she was born addicted to drugs. The time Mother spent with Lily was limited to two in-person visits per week. While Torres testified Mother consistently attended the in-person visits scheduled with Lily, she also stated Mother missed most of the virtual visits. Foster Mother disputed Torres's testimony and stated Mother attended a majority of the virtual visits. However, Foster Mother admitted she had not kept track of the missed visits and "[doesn't] have a count" of missed or attended virtual visits. As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the trial court could have given greater weight to Torres's testimony and less weight to Foster Mother's equivocation on Mother's attendance at virtual visits. *See HealthTronics, Inc.*, 382 S.W.3d at 582. Accordingly, these factors weigh in favor of termination. *See In re A.M.M.*, 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) (indicating evidence the child is "thriving in the current placement" in a "stable and nurturing environment" supported the trial court's best-interest determination.).

*Emotional and Physical Danger to the Child and History of Substance Abuse*

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)). "Continued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *See In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.); *see also See* TEX. FAM. CODE ANN. § 263.307(b)(8) (stating one of the factors to consider in a best interest determination is "whether there is a history of substance abuse by the child's family or others who have access to the child's home"). "This court considers a parent's conduct before and after the Department's removal of the children." *In re S.J.R.-Z.*, 537 S.W.3d at 693.

According to Kraft, Lily came into the Department's care "[b]ecause she tested positive at birth for cocaine and THC, [and] struggle[d] with withdrawal symptoms, that included shaking and trouble eating." Thus, Mother's substance abuse issues led to the removal of the child and the Department's intervention. While Mother did show periods of sobriety during the case, she tested positive for drugs the week before the first day of trial. Mother was also a "no-show" two times the Department requested her to take a drug test.

When the trial court abated the case, it ordered Mother, among other things, to take random drug tests when requested by the Department. The trial court told Mother she is "getting a second bite at the apple" to show the court that her parental rights should not be terminated.

When the trial resumed following the abatement period, Torres testified Mother took several drug tests during the abeyance. Torres's testimony shows that Mother tested positive for PCP and cocaine during the abatement period. When Torres inquired about the positive results,

Mother told her she tested positive for these drugs because "a lady sitting at the bus stop . . . punched [Mother] in the face on the nose and the mouth." Mother reported that the lady was arrested for possession of drugs and explained that must have been why she tested positive for drugs.

The trial court was within its right to disbelieve Mother's story explaining why she tested positive for drugs and could have concluded that Mother chose to take PCP and cocaine during the abeyance period. *See Coburn*, 433 S.W.3d at 823–24 (holding a reviewing court defers to the trial court's judgment regarding credibility determinations). Mother's struggle with substance abuse led to the Department's initial intervention and—based on the recent positive drug test results— the trial court concluded that Mother has been unable to break the pattern of substance abuse. Moreover, the trial court could have inferred, based on her past conduct, that Mother would continue to take illegal drugs and endanger Lily if she were returned to Mother. *See In re J.J.O.*, No. 04-18-00425-CV, 2018 WL 5621881, at *2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.) ("A parent's criminal activities and history are relevant to a best[-]interest analysis."); *see also E.D.*, 419 S.W.3d at 620 (holding a factfinder in a parental termination case may judge a parent's future conduct by her past conduct). Accordingly, these factors weigh in favor of termination.

*Emotional and Physical Needs of the Child and Plans for the Child*

"The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re S.J.R.-Z.*, 537 S.W.3d at 693. "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a).

Here, the trial court chose to abate the trial after the parties rested so that Mother would have more time to show the trial court she was capable of remaining drug free and providing Lily with a

stable home environment. When the trial resumed after the abatement period, the trial court heard evidence that Mother tested positive for illegal drugs, failed to treat her mental health, and continued to miss virtual visits with Lily. Following this update, the trial court determined "there is a pattern that [Mother has] not been able to break [her]self of, and it's not in the best interest of the child . . . to keep her in foster care limbo." Because Mother was unable to break herself of the pattern of substance abuse and neglect of her own care, the trial court was within its right to determine Mother could not provide for the emotional and physical needs of the child. *See In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding mother was "unable to provide for the emotional and physical needs of her children" because of her continued use of illegal drugs); *see also J.L.B.*, 2017 WL 4942855, at *7 ("A factfinder may infer from a parent's past inability or unwillingness to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future.").

In contrast, Lily's foster family has consistently provided Lily with a nurturing and loving home and is willing to adopt her. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.) ("The stability of the proposed home environment is an important consideration in determining whether termination is in the child's best interest."). For example, Foster Mother testified Lily came to her "with services set in place" to address her eating issues. Lily has graduated out of her services since coming into Foster Mother's care and Foster Mother even requested Lily be reassessed to ensure she did not need more services. Accordingly, this factor weighs in favor of termination.

*Parent's Acts, Omissions, and Willingness to Accept Help and Effect Positive Environmental Change*

Under her service plan, Mother was required to maintain stable housing and stable employment, attend visitation with Lily, participate in parenting classes, participate in a drug assessment and any recommended drug treatment, comply with random drug testing, participate in a psychological evaluation and any recommended treatment, participate in individual therapy

and family therapy, and participate in domestic violence classes.  Torres testified Mother engaged in most of her services and consistently attended in-person visitation with Lily.  However, Mother tested positive for drugs during the pendency of the case, did not engage in counseling until a month before the trial started, and consistently missed virtual visitation with Lily.

The trial court made it clear that Mother was to remain drug-free during the forty-six-day abatement period.  The evidence shows Mother tested positive for cocaine and PCP during this time period.

Mother was prescribed medication to treat her depression and anxiety.  However, Torres testified on August 24, 2021, that Mother's prescription—that was filled on May 17, 2021—still contained twenty-five out of thirty pills, and Mother's prescription—that was filled on June 17, 2021—still contained twenty-eight out of thirty pills.  The trial court could have concluded that Mother is neglecting her mental health by refusing to take her medication.  *See In re A.G.*, No. 05-15-01298-CV, 2016 WL 3225894, at *6–7 (Tex. App.—Dallas June 10, 2016, pet. denied) (mem. op.) (holding "Mother's unaddressed mental health problems impeded her ability to parent" and care for her "children's current and future physical and emotional needs").

Mother's unwillingness to fully comply with court-ordered services, remain drug free, and take care of her own mental health indicates an unwillingness to effect positive environmental change.  Accordingly, these factors weigh in favor of termination.

*Social Support System*

In determining the child's best interest, the trial court should consider "whether an adequate social support system consisting of an extended family and friends is available to the child."  TEX. FAM. CODE ANN. § 263.307(b)(13).  Torres testified Mother "continues to tell [Torres] that [Mother] does not have support in [the area] and that the support with [maternal grandmother] has ended."  Torres opined Mother "does not have a support system . . . to help her successfully care

for the child appropriately." Mother admitted her "relationship with [maternal grandmother] is not good" and maternal grandmother "actually told [Mother] not to call her 'mom' [anymore.]" The record reflects Mother does not have an adequate social support system consisting of extended family and friends to help her care for the child. *See id.* Accordingly, this factor weighs in favor of termination.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice