

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00474-CV

**IN THE INTEREST OF J.S.R.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA00651
Honorable Kimberly Burley, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: October 25, 2023

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child,

J.S.R.[1]  Mother challenges the sufficiency of the evidence supporting the trial court's finding that

termination was in the child's best interest.  We affirm.

### BACKGROUND

The Department of Family and Protective Services ("the Department") became involved

in the underlying case on April 20, 2022, when the Department received a referral that J.S.R., who

was ten months old, was hospitalized and tested positive for methamphetamines.  Mother was

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father."  We refer to J.S.R. as "the child" or using his initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order terminated Mother's and Father's parental rights to the child, but only Mother appeals the trial court's order.

arrested at the hospital on an outstanding warrant and the investigating officer contacted the Department because there was no one to make medical decisions for the child or to take custody of the child. The Department could not identify how the child ingested the drugs and sought removal to protect the child.

On April 22, 2022, the Department filed a petition seeking temporary managing conservatorship of J.S.R. and termination of Mother's parental rights. On March 22, 2023 and March 28, 2023, the trial court held a bench trial. The trial court heard testimony from: Felicia Garcia, the Department's removal caseworker; Felicia Hill, the Department's caseworker; Don Bentley, Jr., Mother's therapist; Officer Gilbert Guzman, the responding officer when the child ingested methamphetamines; Natalie Kissoon, M.D., a supervising pediatrician at the hospital where the child was taken; Father; and the child's paternal aunt.[2] Mother was present for the first day of trial; however, she did not attend the second day.

On May 1, 2023, the trial court entered an order terminating Mother's parental rights to J.S.R. Specifically, the trial court terminated Mother's parental rights based on statutory grounds (D), (N), (O), and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (N), (O), (P). The trial court also found it was in J.S.R.'s best interest to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will

---

[2] We refer to paternal aunt as "Aunt" to protect the identity of the child. *See* TEX. R. APP. P. 9.8(b)(2).

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate

finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

## BEST INTEREST

Mother argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the child's best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[3]

---

[3] These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home;

*See id.* § 263.307(b). We also consider the *Holley* factors.[4] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet.

---

(6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

Here, the evidence shows the child was hospitalized for ingesting methamphetamines while he was in Mother's custody and care. The hospital contacted law enforcement and Officer Guzman was sent to investigate the matter. According to Officer Guzman's investigation, Mother left J.S.R. with a male friend while she allegedly went to an auto parts store. Mother told Officer Guzman that she left the friend's house at approximately noon and returned at approximately 4:00 that afternoon. Later that evening, Mother began to notice the child was acting strange and crying a lot. Mother reached her finger down the child's throat to determine whether anything was obstructing his airway. The child did not flinch or otherwise react. According to Guzman's recollection of Mother's story, the baby was also trying to "scratch at the walls, and he was kind of like sticky." Mother later bathed the child and tried to put him to bed. When the child wouldn't sleep, around midnight, Mother took him to another friend's house. Because the child was still acting strange, Mother called her cousin who rushed over, picked up Mother and the child, and took them to a nearby fire station. The firefighters at the station called emergency medical services ("EMS") who transported the child to the hospital.

J.S.R. was treated by a medical fellow who was supervised by Natalie Kissoon, M.D. Dr. Kissoon, a pediatrician who is board certified in child abuse pediatrics, testified that J.S.R., a ten-month old baby, presented with an altered mental status, rapid breathing, rapid heart rate, and movements in his body that were abnormal. Mother also reported J.S.R. was not acting like himself. J.S.R. was given a urine drug screen that tested positive for amphetamine, the breakdown product of methamphetamine. Dr. Kissoon further testified J.S.R. "had an elevated creatine kinase, which is a measure of the breakdown of muscle." Dr. Kissoon continued, "an elevated creatine kinase is something that you see in methamphetamine ingestion and overdoses." Dr. Kissoon

believed the child's unusual behavior was consistent with the methamphetamine ingestion shown by the positive drug screen.

According to Dr. Kissoon, this incident was "a failure to provide appropriate supervision to [the] child" because a ten-month-old child "requires constant supervision" and Mother was unable to report "how this ingestion occurred." *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) (holding a child's young age renders him vulnerable if left in the custody of a parent who is unable or unwilling to protect him or attend to his needs).

Officer Guzman suspected Mother may have been under the influence at the hospital because, when he interviewed her, she was not able to answer simple questions and was "all over the place" with her story. Officer Guzman stated Mother was more concerned with finding a lost cell phone than the welfare of her baby while at the hospital. When Officer Guzman asked how methamphetamines got into the child's system, Mother stated there were some people at her friend's house that may have been doing drugs while she was at the auto parts store. Mother speculated the child may have grabbed the drugs from a table. *See In re M.C.L. V*, No. 04-21-00277-CV, 2022 WL 219002, at *6 (Tex. App.—San Antonio Jan. 26, 2022, no pet.) (mem. op.) ("A parent endangers her children by accepting the endangering conduct of other people.").

Felicia Garcia, the Department's caseworker at the time of removal, testified the Department received referrals stating Mother was under the influence and J.S.R. tested positive for methamphetamines "and that he was going to survive." The Department sought removal because Mother was arrested at the hospital, Father was incarcerated, there was no one to make medical decisions for the child, and the Department could not identify how the child ingested the drugs. Mother also had a prior history with the Department for drug use and domestic violence in 2021. *See In re S.L.W.*, No. 04-22-00425-CV, 2023 WL 28451, at *5 (Tex. App.—San Antonio

Jan. 4, 2023, pet. denied) (mem. op.) (alteration omitted) ("A parent's criminal activities and history are relevant to a best-interest analysis.").

Felicia Hill—the Department's caseworker during the legal case—testified a service plan was created for Mother after the child was removed. The service plan required Mother to take a drug assessment and follow all recommendations, pass random drug tests, participate and complete a psychological evaluation, individual counseling, family violence prevention classes, and parenting classes. Mother was also required to provide a stable home and attend visits with J.S.R.

Mother completed the drug assessment, and it was recommended that she participate in outpatient drug treatment. Don Bentley, Jr., Mother's counselor for outpatient drug treatment, testified that Mother only attended three out of six individual therapy sessions and nine out of sixteen group therapy sessions. Bentley stated Mother was not an active participant in sessions, made no progress in drug treatment, and "was hostile towards treatment" because she "did not believe that she needed to be in treatment." According to Bentley, Mother seemed to only want to talk about how she felt the Department "was after her to ruin her life." Mother would not acknowledge her struggle with drug use. She would admit that she tested positive for drugs, but would not admit to using drugs. Bentley opined a person cannot make progress addressing their struggle with drug use until they acknowledge they have a problem. Mother was unsuccessfully discharged from outpatient drug treatment due to lack of attendance. Bentley concluded Mother has not addressed her drug issues and needs to complete drug treatment.

Hill testified that, at a status hearing on October 5, 2022, Mother was ordered by the trial court to participate and complete inpatient drug treatment "because she was still struggling with her sobriety at that point." However, Mother did not engage in an inpatient drug program. Following her drug assessment, it was also recommended that Mother participate in Narcotics Anonymous/Alcoholics Anonymous ("NA/AA") meetings; however, Mother never provided Hill

with sign-in sheets showing she attended any meetings. In June 2022, Mother tested positive for illegal substances. *See In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding a parent's illegal substance abuse "places her children in emotional and physical danger"); *see also In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.) ("Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship.").

Mother quit taking the random drug tests after Hill confronted Mother about the positive drug test. Hill informed Mother that a missed test would be presumed positive, yet Mother continued missing drug tests. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs.").

Mother did not complete her psychological evaluation, family violence prevention classes, parenting classes, or individual counseling. *See In re D.J.R.*, No. 04-22-00579-CV, 2023 WL 3214552, at *4 (Tex. App.—San Antonio May 3, 2023, pet. denied) (alterations omitted) ("[A] parent's actions or inactions with regard to the court-ordered service plan is relevant to a child's best interest."). She only attended sixteen of thirty-six visits with J.S.R. "A parent's missed visits with the child may . . . be an act or omission that supports termination." *Id.* Mother had not seen the child consistently since December 16, 2022, and only attended one visit in the three months leading up to trial. At this visit, J.S.R. was hesitant around Mother, until Hill allowed Aunt—who

is the child's kinship placement—to participate in the visit. Aunt testified she and the child waited for Mother at one visitation for approximately an hour before it was canceled.

When Mother did attend visitation, she would bring inappropriate food and drinks for the child. Hill testified Mother fed the infant a pint of ice cream at one visit. Another time, she fed him "an entire little cake" and red soda or red fruit punch. J.S.R. would become sick after these visits. Hill stated that "[o]ne time whatever he was drinking made him ill and he had to be taken to the doctor." When the visitation monitor would try to redirect Mother's inappropriate feedings, Mother would become "irate." *See Holley*, 544 S.W.2d at 372 (stating a parent's acts which may indicate that the existing parent-child relationship is not a proper one as a best-interest factor).

Hill testified that Mother has exhibited "very erratic behavior during the life of this case." Hill further stated Mother had to be escorted out of the building during a meeting with Hill because Mother was "cussing" Hill out. Finally, Mother did not exhibit stable housing throughout the case. Father told Hill that Mother has been homeless for many years.

In contrast, Hill testified Aunt has been providing the child with all his needs. J.S.R. was placed with Aunt in December 2022, and she has met his medical, dental, and therapeutic needs. Hill stated J.S.R. has "made all of his appointments. He's thriving. He's walking, pretty much almost running now." According to Hill, Aunt "is definitely doing her job when it comes to [J.S.R.]" Aunt confirmed J.S.R. has improved in her care. According to Aunt, he is walking and talking and repeats everything she says. He is reaching his goals from therapy and the therapist doesn't "feel the need to work with him anymore."

Aunt fosters the child's educational needs as well. Hill stated Aunt takes him to the zoo and "lots of museums." Hill opined Aunt "is very invested in [J.S.R.'s] future." Aunt is also raising a twelve-year-old daughter and an eleven-month-old child. Hill confirmed J.S.R. and Aunt's biological baby get along, are very bonded with one another, and play and interact all day.

Aunt testified she and her daughter are also bonded with the child. According to Aunt, J.S.R. loves Aunt's children, and the children consider J.S.R. their sibling. *S.J.R.-Z.*, 537 S.W.3d at 693 ("When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent.").

Aunt is waiting on a clerical error to be corrected and then she will be licensed to adopt. Aunt testified that she intends to adopt the child if parental rights are terminated. *See id.* ("The need for permanence is the paramount consideration for the child's present and future physical and emotional needs."). Hill stated she believed adoption by Aunt is in the child's best interest because "he needs the stability and he needs to be in a caring, loving, drug-free environment, free of violence" and Aunt is able to provide that for him. *See* TEX. FAM. CODE ANN. § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *In re A.M.M.*, 04-19-00806-CV, 2020 WL 2139308, at *3–4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) (indicating evidence the child is "thriving in the current placement" in a "stable and nurturing environment with a planned adoption" supported the trial court's best-interest determination).

Hill concluded termination of Mother's parental rights is in the best interest of J.S.R. because Mother has been unable to provide for the child's basic needs or support and she has not shown positive change throughout the case. J.S.R. does not have a bond with Mother, has only seen Mother once in the three months leading up to trial, and Mother's previous visits with him were inappropriate. Hill opined she has not seen behavioral changes in Mother that would be "developmentally appropriate for [J.S.R.]." Based on Mother's past, the concerns with drug use, and her inability to show improvement, Hill testified Mother does not have the ability to protect the child. Hill further opined Mother cannot provide the necessary stability for J.S.R. Aunt agreed

stating Mother has not shown stability when it comes to showing up for visits with the child. Aunt opined it is in J.S.R.'s best interest for Mother's parental rights to be terminated because Mother has "had a good amount of time to . . . fight for him" and she hasn't done that. Aunt stated she believed J.S.R. "deserves family that's going to be there" for him and that she "will always be there for him."

The trial court heard ample evidence regarding Mother's struggles with drug use. The evidence shows that the child was directly harmed by Mother's choices, whether it be direct exposure to drugs, or leaving the child in the care of others who were using drugs in the child's presence. *See In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."). Significantly, the evidence shows that Mother refused to address her drug issues or otherwise show positive change or the ability to provide stability for the child. *See* TEX. FAM. CODE ANN. § 263.307(b)(11) (listing the willingness and ability of the parent to effect positive environmental and personal changes as a best-interest factor). Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the child's best interest. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to J.S.R.

Irene Rios, Justice